CARLOS CID & COMPANY, PLAINTIFFS AND APPELLEES, *v.* PORTO RICO CONSTRUCTION COMPANY, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan, Section 1, in an Action to Rescind a Sale and for Damages.

No. 1766.—Decided July 23, 1918.

CONTRACT—WARRANTY—AGENT—PRINCIPAL.—The facts in this case clearly indicate that in order to avoid liability under a warranty it was incumbent upon the defendant to show clearly that it was acting as an agent and not as prin-

cipal, for it seems improbable from the evidence that in a contract emanating from the manufacturer the terms thereof would not have been more clearly and technically expressed.

ID.—ID.—ID.—In a contract warranting that a pump is capable of lifting molasses against a head of forty feet the word ''head,'' which means power or force, must be held to refer to molasses and not to water, the standard, especially where the defendant is aware of the plaintiff's needs and undertakes to meet them.

The facts are stated in the opinion.

*Mr. J. H. Brown* for the appellant.

*Mr. Francisco Soto Gras* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

In this appeal there are two alleged errors founded on the contentions: 1st. That the complainant did not contract with the defendant. 2nd. That there was no failure of the warranty as alleged by complainant.

Appellant admits that substantially all the dealings of complainant were with said appellant, the Porto Rico Construction Company, but the latter maintains that it was acting only as the agent of the P. H. & F. M. Roots Company. We are inclined to agree with appellee that, given the fact that the person who dealt with the complainant was the agent and officer of the defendant, it was incumbent on the latter clearly to show that said company was acting as an agent and not as principal, but the evidence tends to show in itself that the Porto Rico Construction Co. acted for itself and that it and not the Roots Company sold the pump in controversy to the complainant. There can be no doubt that complainant knew that the defendant had an agency for the Roots Company, but nevertheless the complainant contracted with the defendant. The contract recites that ''the Porto Rico Construction Co. will deliver to the complainant.'' It appears to be signed by E. P. Chase, as agent of the defendant. The Roots Company is nowhere mentioned as such. The payment of the price went to the Porto Rico Construction Company and the receipt to the customer proceeded from it. The evidence of the complainant is that it bought of the Porto Rico Construc-

tion Co.; and, as we have intimated, practically all the dealings and preliminary negotiations were between complainant and defendant. The fact that Carlos Cid inspected a pump or pumps of the Roots Company at the factory or elsewhere, or had dealings with the manufacturer, does not affect the question of who were finally the parties to the contract. It is very similar, as appellee points out, to the purchase of an automobile, which may be purchased at the factory, but is also sold through agents, and the latter generally contract directly with the customer. That the contract emanated from the Porto Rico Construction Company, and not from the Roots Company, will be evidenced, we think, by the terms of the contract itself. It seems most improbable from the evidence that in a contract emanating from the manufacturer itself the pressure or "head" which the pump was "guaranteed" to overcome would not have been more clearly or even more technically expressed, so as to leave less doubt of the terms of the said contract.

We shall consider the second ground of error. In the preliminary correspondence of the Roots Company, while asserting that the pump was particularly suitable for molasses work, they never said anything more than that the total head against which their pump would work was 40. But neither of the parties apparently had any notion that the word "head" as used in the contract meant anything but height. The essential words to be interpreted are as follows:

"1 Roots Low Lift Rotary Pump having a displacement of 3.35 U. S. gallons for revolution to run at 150—R P M guaranteed to deliver 25,000 U. S. gallons of Molasses per hour against a suction head of      and a discharge head of 40 feet. Horizontal length of discharge 1,100 feet of 8″ pipe."

The pump was tested finally for a height of fourteen feet in an arrangement of 1,037 feet of tubing with certain elbows and a special manner of discharge into a ship. It is conceded that the pump did not work. The evidence is thoroughly con-

vincing that both parties thought and intended, before the actual signing of the contract, that the pump would be suitable for the needs of the complainants in loading molasses on ships. The appellant, however, maintains that the contract, having been reduced to writing, the parties are limited to the warrant therein expressed and that the law prevents a resort to an implied warranty.

The engineers or experts of the appellant maintain, as we understood them, that ''discharge head'' means power, force or ability to pump to a certain height as against certain resistances or friction, like length of tubing, elbows, viscosity, temperature and other features of the liquid sought to be pumped and perhaps other things. They testified that the total head, given the conditions under which the pump was tested, amounted to approximately 53.50. They likewise testified that the total head for pumping molasses through horizontal tubing under the conditions described in the contract for 1,100 feet amounted to 36 feet. In other words that the pump sold was only capable of lifting molasses four feet at the point of discharge, allowing nothing for elbows or other like resistence elements.

In the absence of any showing that the complainant was an expert, the words of the contract must be given what would be their ordinary meaning. Tested in this way ''discharge head'' would seem to mean ''head'' at the point of discharge. And ''head'' must refer to molasses and not to water, the standard. We say this partly because otherwise the introduction of the words ''molasses'' and ''1,100 feet'' into the contract would have been meaningless. We say this also because a contract must be interpreted most strongly against a manufacturer or its agent, the party who draws the said contract. The parties were contracting in terms of molasses after travelling a distance of 1,100 feet. The contract should be given this meaning, else for the parties it is entirely ambiguous.

We agree with the appellant that where there is an express warranty the parties may not have recourse to an implied one.   We are however of the opinion that unless the contract has the meaning for which the appellee contends, it is totally ambiguous.   The warranty being ambiguous and hence meaningless, the said parties must have intended that the machine sold should be reasonably fit for the purposes for which it was intended.   It is absurd to suppose that the complainant was buying or defendant selling a machine that was only warranted to raise molasses four feet without allowing for elbows in the tubing or the like.

When it came to the proof the intention of the parties became clearer.   Each of them knew the general purposes of the business of the complainant and the first overture proceeded from the defendant or its agent to sell complainant a pump that would serve the latter's purposes.   In the course of the correspondence the defendant translated "head" as, "altura" which was another indication that the parties were contemplating a height of forty feet with ordinary deductions due to special conditions.   There are strong indications that the defendant was as much astonished as the complainant when the pump didn't work, and did its best to prove that said pump would work under the test conditions.   The experts of appellant show that its working was an impossibility if the total head of the pump was forty.   The defendant then would have been guilty of bad faith if the warranty meant that for which they now contend, of which bad faith we acquit it.

We have drawn attention to the fact that the Roots Co. spoke of total head.   For some reason it was the defendant that introduced into the contract the words "molasses" and "1,100 feet."   They believed what the Roots Co. would have known to be otherwise, namely, that the pump could raise molasses forty feet at the point of discharge.

Appellant makes some point on the elbows, hose and the Y, etc., forming part of the arrangement on the day of the test.

The experts of appellant testified that the total head that day was 53.50 and according to them that the head described in the contract amounted to 36. Hence the special conditions amounted to the difference, or 17.50. As these 17.50 feet included the 14 feet to which the molasses was attempted to be raised at the time of the test, it would seem, if the experts are not mistaken, that the angulation, hose, etc., amounted to 3½. A significant fact if we sufficiently follow the experts. We do not pretend to have grasped either all their terminology or their conclusions.

Section 1251 of the Civil Code provides that if any stipulation of a contract should admit of different meanings it should be understood in the sense most suitable to give it effect. Despite the opinion of the engineering experts as to the meaning of discharge head, technically used, the courts are necessarily more expert in the interpretation of the intentions of parties and we agree with the finding of the court below.

Likewise, there was a conflict in the witnesses as to what the contract meant. Without stressing that point in this case, it makes for the affirmance of the judgment which is the conclusion at which we have arrived.

*Affirmed.*

Chief Justice Hernández and Justices del Toro, Aldrey and Hutchison concurred.